Brown *v.* Cherry.

otherwise.   But as the question was immaterial, in the view the jury took of the case, it is of no consequence on the appeal.

Ju&gment affirmed.

.[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 5, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

---

## WILLIAM BROWN *vs.* LOUISA M. CHERRY.

One equal third part of certain premises was conveyed to the plaintiff, by the then owner, at the request of S., who paid the consideration, and who requested the plaintiff to take the title to himself, and hold the premises for her.   Nothing was said about the form of the deed.   S. was not present when it was made, but she directed that the land should be deeded to the plaintiff, for her benefit, and supposed it had been so deeded.   *Held* that the case was clearly within the section of the statute relative to a grant made to one person for a valuable consideration paid by another, (1 *R. S.* 728, § 51;) and that no use or trust whatever resulted or existed in favor of S., but as to her, the whole title vested absolutely in the grantee (the plaintiff.)

*Held, also,* that inasmuch as the plaintiff was to take the title to himself, and hold it for her, manifestly as a naked or secret trust, the presumption was, in the absence of evidence and finding of fact to the contrary, that the conveyance was made in accordance with the understanding of all the parties to the transaction.   That in this respect, the case differed from that of *Lounsbury* v. *Purdy*, (18 *N. Y.* 515.)

*Held, further,* that even if it could be found, from the evidence, that S. did not understand that the conveyance to the plaintiff was to be made absolute in its terms, or consent that it should be so made, her interest would be but an implied or resulting trust, and could not be alleged or establised, to defeat or prejudice a mortgage upon the premises, executed by the plaintiff for a valuable consideration; unless the mortgagee had notice of the trust, either at the time; or before, the execution and delivery of the mortgage.

The plaintiff, being so vested with the absolute title to the premises, executed a mortgage upon the same, for a valuable consideration, to C., who had no notice, or knowledge, to put him upon inquiry as to the existence of the

trust. *Held* that such mortgage was a valid and subsisting lien upon the mortgaged premises, as against any interest of S. therein. And a judgment dismissing a complaint filed by the plaintiff to enjoin the foreclosure of such mortgage was affirmed.

APPEAL from a judgment entered upon the report of a referee.

The action was brought to enjoin the foreclosure of a mortgage, on the ground of want of consideration. The mortgage was given by the plaintiff to Chauncey W. Cherry (the husband of the defendant) on the 29th of December, 1857, for $1500, payable five years from May 13, 1858, with annual interest.

The referee found the following facts: 1. That on the 7th day of May, 1852, George W. Hall and Chauncey W. Cherry were the owners of part of water lot 62, Syracuse, being 203⅓ feet, taken from the west end thereof. 2. That parcels of the land so owned by them were subject, at said time, to certain mortgages, which were, in whole or in part, unpaid, viz.: A mortgage from George W. Hall to Samuel Mead on the west 123⅓ feet of said land, dated November 1st, 1849, for $1323.33; a mortgage from Chauncey W. Cherry and others to George Hooker, on the east 80 feet of said land, dated February 1, 1851, for $700; a mortgage from Chauncey W. Cherry and others to Samuel F. Gelston and Cornelius A. Van Slyke, on the west 123⅓ feet of said land, dated February 5, 1852, for $2000. 3. That on the 7th day of May, 1852, the said Chauncey W. Cherry and George W. Hall conveyed by deed, containing a covenant of general warranty, the undivided one third part of said land to John L. Langdon, for the consideration, as stated in said deed, of $3640. This deed was recorded in the proper county, September 20, 1853. The mortgages executed by said Cherry were collateral to bonds of the mortgagors accompanying the same. 4. That on the 20th day of October, 1853, Langdon conveyed the land so conveyed to him as aforesaid, together

with the undivided third part of 70½ feet of land on said lot 62, lying farther east, by deed, containing a covenant of general warranty, to William Brown, except that this deed was subject to certain mortgages on said premises, other than the Gelston and Van Slyke mortgage, aforesaid. This deed was recorded October 21, 1868. 5. That on the 15th day of December, 1856, the said Chauncey W. Cherry, being then the owner of the remaining undivided two thirds of the premises described in the deed to said Brown, last aforesaid, conveyed the same to said Brown by deed, containing a covenant against his own act, which deed was recorded March 12, 1857. 6. That at the time of the conveyance last aforesaid, one Alpheus Stewart held the equitable title to the premises conveyed, and said conveyance was made to Brown by Cherry, at the request of Stewart, upon a parol understanding between said Brown and Stewart, that Brown should hold the land for the benefit of said Alpheus. 7. That the consideration for the conveyance by Langdon to Brown aforesaid, was the transfer to said Langdon by Caroline Stewart, the wife of said Alpheus, of certain property of said Caroline; and at her instance and request the said conveyance was made to Brown, upon the parol understanding between said Brown and said Caroline, that he should hold the land for the benefit and interest of said Caroline; the trust was not expressed in the deed. That the wife of said Brown was the sister of said Caroline, and the said Cherry and Alpheus were brothers-in-law. 8. That at the time of the conveyance of the undivided two-thirds aforesaid by Cherry to Brown, there existed in addition to the mortgages aforesaid, which were liens on parts of the premises, a certain mortgage on said undivided two-thirds, executed by Cherry to George W. Hall, dated January 26, 1854, for $3238.09. 9. That prior to the 13th day of May, 1857, proceedings had been taken, and were then pending, for the foreclosure of the mortgage to Gelston and Van Slyke. That

Stewart applied to Cherry, while said foreclosure proceedings were pending, and before said 13th day of May, to advance for him, or to procure one Hopkins, the father-in law of said Cherry, to advance the money to pay and discharge the mortgage, then being foreclosed, and the said Alpheus promised to procure Brown to secure the repayment of said advances, which might be made by Cherry, or which he should procure to be made, by executing a mortgage on the land on said lot 62, owned by said Brown, or by some other security thereon. 10. That Cherry, in compliance with said application, and upon the faith of receiving the security promised as aforesaid, advanced a part from his own means, and a part from money loaned him by said Hopkins, a sum not less than $1500, to apply in payment on said mortgage, and said mortgage was fully paid on the 13th day of May, 1857, by the application of said sum thereon, together with money furnished by said Alpheus, and said foreclosure proceedings were discontinued. 11. That afterwards, in pursuance of said promise, Stewart procured Brown to execute to Cherry the mortgage in question, to secure the repayment of the money so advanced as aforesaid, which mortgage was afterwards assigned by Cherry to Hopkins, and by Hopkins to the defendant, Louisa M. Cherry, and no part of the sum has been paid. That at the time of the commencement of this suit, the said Louisa was proceeding to foreclose the same. 12. That prior to the 13th day of May, 1857, some arrangement had been made, and which arrangement was then in force, whereby Stewart, as between him and the said Chauncey, had assumed to pay and discharge the said Gelston and Van Slyke mortgage. There was no proof as to what the specific arrangement was, but there was evidence to show that such an arrangement in substance existed. 13. That it was not proved that when Cherry advanced said money, or took said mortgage, he knew or had any notice to put him upon inquiry, that

Brown held said land, or any portion of it, for the benefit or in trust for said Caroline, or that it was conveyed to him for the benefit or in trust for her. The referee held that the evidence of notice in this case was not sufficient to authorize the finding that such notice existed when the money was advanced and the mortgage given. 14. That in 1864 the mortgage from Cherry to Hall, aforesaid, was foreclosed, and the property embraced therein was sold on the foreclosure, to one Grove Lawrence. 15. That from the time of the first conveyance to Brown, aforesaid, Stewart had the full management for his wife of said property, and recceived the rents and profits thereof, and had full authority to act for her in respect thereto. · 16. That there had never been any eviction from the premises ·under the Gelston and Van Slyke mortgage.

The referee found, as a conclusion of law, that the mortgage in question was a valid and subsisting lien on the premises embraced therein, and was supported by a good consideration, and that the defendant was entitled to judgment dismissing the complaint, with costs.

He therefore ordered accordingly.

From the judgment of dismissal, the plaintiff appealed.

*Hunt & Green,* for the appellant.

I. It is claimed that the admission of evidence of payment by Cherry, of the Gelston and Van Slyke mortgage, to establish a consideration for the mortgage in question, was error. With the payment of the Gelston and Van Slyke mortgage, the plaintiff had nothing to do as to the premises in question. Cherry was the party primarily liable to pay it, and as to it, the plaintiff had a covenant of warranty from Cherry, and it was entirely immaterial as to the plaintiff, even if Stewart had, by an agreement with Cherry, assumed to pay and protect him against it.

II. That the plaintiff was trustee of the property in question, for Mrs. Caroline A. Stewart, is beyond ques-

tion. 1st. It is so found by the referee. 2d. It was so held by the general term of the fifth district, on appeal from Judge Morgan's decision. 3d. The evidence, as well as the findings of the referee, establish it. The land was deeded to the plaintiff, Mrs. Stewart paying therefor, and he really holds it for her benefit. She was not present when the deed was executed, nor did she see it, nor know the form thereof, but had directed and supposed the deed was for her benefit. (*Lounsbury* v. *Purdy*, 18 *N. Y.* 515.)

III. The plaintiff, being such trustee, can defend against the mortgage as well for himself as also for Mrs. Caroline Stewart, his *cestui que trust*. (*Code*, § 113. *Brown* v. *Cherry*, 38 *How. Pr.* 352.)

IV. That there was no consideration to Brown, the plaintiff, or to Mrs. Stewart, is apparent from the whole case, and there is no equitable consideration as to them, to support the mortgage. Cherry's paying the Gelston and Van Slyke mortgage, even if Stewart had assumed to protect him against it, forms no consideration, whatever, to the plaintiff or Mrs. Stewart for the mortgage in question. Cherry, as to them, is not a *bona fide* mortgagee. 1st. The mortgage of Gelston and Van Slyke was for him to pay, so far as the plaintiff or Mrs. Stewart was concerned. They held his covenant against it. 2d. Cherry had knowledge of the trust in Brown for Mrs. Stewart. 3d. The mortgage in question was not executed until seven months after the payment of the money. 4th. Cherry, at the time of its execution, assured Brown that it was all right, and he should have no trouble about it. 5th. Even if Cherry had disclosed to Brown the payment by him of the Gelston and Van Slyke mortgage, and requested the mortgage in question to secure to him the repayment of such moneys, and Brown had so executed it as security for Alpheus, against Cherry, a consideration to support it would still be wanting. Brown, in equity, held the land, freed from the Gelston and Van Slyke mortgage, so far as

Cherry was concerned. (Equity regards that done which ought to be done.) 6th. Mrs. Stewart did not direct nor consent to the mortgage, nor know of its execution.

V. There are no equities to entitle the defendant to the mortgage in question. The assignment thereof by Cherry to Hopkins, in 1861, and his bequeathing it to his daughter, wife of Cherry, gives her no better right than her husband had; besides, if the moneys were advanced by Cherry for Alpheus Stewart, and at his request, yet Stewart had a set-off against it. Had Cherry lived, there never would have been any trouble about it. He promised Brown this, and for over ten years, nothing was heard of this mortgage by Brown or Mrs. Stewart; no principal or interest was demanded or paid, although the premises, altogether, were worth less than the face of the mortgage; and on two-thirds of it there were prior incumbrances greater than its value, and for which, said two-thirds were taken after the demands of Stewart against Cherry had been barred by the statute of limitations. We insist the attempted foreclosure of the mortgage in question cannot and ought not to succeed.

VI. The referee found that, as between the said Alpheus and Chauncey, there existed an agreement that Alpheus was to pay and discharge the Gelston and Van Slyke mortgage. Grant this; what follows? Alpheus does not perform, and the mortgage in question, even if given before the payment of the said mortgage, both at law and in equity, would have been only a security to Chauncey for the performance of said agreement. No new consideration made him a *bona fide* holder for value; and Brown, being really a trustee, could not mortgage the property as security for the debts of Alpheus. (1 *John. Cas.* 51. 12 *John.* 343. 2 *John. Ch.* 155. 4 *id.* 136. 1 *id.* 566. 10 *John.* 495. 11 *id.* 91.) Besides, the referee finds that before the assignment of the mortgage to Hopkins, Cherry owed an account, due to said Stewart, more than the

amount due or to become due on said mortgage. Surely, as against a trustee who has inadvertantly given a mortgage as security merely for the debt of another, equity will enforce the equitable application of set-offs and payment, to its fullest extent. (50 *Barb.* 344.)

VII. The effect of the foreclosure of the mortgage in question, will be to take all of Mrs. Stewart's interest in the property, and this without her consent, or knowledge of the giving of the mortgage, and without any consideration whatever, either to her or her trustee, and against the express promise of the grantee, that her trustee should not be troubled in regard thereto; it being a mortgage got by him, so far as they are concerned, for his own accommodation. The foreclosure of the Gelston and Van Slyke mortgage, if permitted, would have taken only 123⅛ feet of Mrs. Cherry's land, and left her 80 feet, and also 70½ feet; and she would have had her remedy upon the covenants contained in the conveyances of the land before referred to, as to the 123⅛ feet. The letters of Stewart to Cherry show conclusively, even those written to him after May 13, 1857, (although not competent evidence, and received against the plaintiff's objection,) that a mortgage from Brown was not contemplated or proposed until after payment of the Gelston and Van Slyke mortgage, and especially that Mrs. Stewart's third was not inserted in the mortgage until after the letter of July 30. Besides, they show that Cherry was interested in the payment of the mortgages, then liens upon the premises. The evidence as to the arrangement made by Stewart with Cherry, to take up the Gelston and Van Slyke mortgage, is necessarily in writing, and in the July letter, Stewart speaks of having made the mortgage as requested, and reminds Cherry that he would have to see to its payment. And he speaks of inserting another price; this could only refer to Mrs. Stewart's third. It is clear from the letters and evidence, that prior to the 18th of May, no

security had been asked or promised, for on the 22d of May, the letter of Stewart refers to Cherry's of the 18th. A mortgage was afterwards made, but was unsatisfactory to Cherry, and not executed, and afterwards this mortgage in question, including Mrs. Stewart's third. Besides, it is to be gathered from the letters that Stewart was to make the payments, as between himself and Cherry, for he speaks of so doing if he has to borrow the money. Even in the letter of May 10, 1861, Stewart reminds Cherry that he is holden on the property, and speaks of selling part and releasing him. This could mean nothing except in reference to Cherry's outstanding covenants and bonds. That Stewart himself regarded the mortgage as inequitable, and asked its satisfaction, is shown by his letter of October 22, 1864. It is insisted that for the doings of an improvident husband, Mrs. Stewart is not to be thus deprived of her property; and that she can resist this mortgage, given without consideration, without authority, without her consent, without even her knowedge, and without either a legal or equitable consideration to support it. If so, then the plaintiff, her trustee, having executed the mortgage, under the impression that it had been directed by her, and that it was to be used for her benefit, can and ought to prevail in this action, and the judgment should be reversed and a new trial granted.

*Frank Hiscock*, for the respondent.

I. If, under the facts of this case, there was a resulting trust in this land, (see *Lounsbury* v. *Purdy*, 18 *N. Y.* 515,) yet Brown's deed being absolute in its terms, and Cherry having taken his mortgage without notice, (see the finding on that point and the cases cited on the question of notice,) and for a valuable consideration moving at the time, the trust does not defeat or prejudice the mortgage. (*See* 1 *R. S.* 678, § 54, *Edm. ed.*; *Wood* v. *Robinson*, 22 *N. Y.* 564.)

II. The mortgage was assigned by Cherry to Hopkins for value received, before due. Both Hopkins and Cherry are dead. It is nowhere pretended that Hopkins had any notice of this equity in Mrs. Stewart. Under the provisions of the statute cited, he certainly took the mortgage unprejudiced by this claim. His devisee stands in his place. (*See Griffith* v. *Griffith,* 9 *Paige,* 315; 8 *Cowen,* 260.)

III. The loan was made, and the mortgage executed, to save the estate; except, therefore, by the foreclosure of this Gelston and Van Slyke mortgage the property would have been disposed of, and equity will not suffer the mortgage to be set aside without payment of the money advanced. The power of alienation was not suspended in Brown. (*See* 1 *R. S.* 680, § 65, *Edm. ed.*)

IV. The interest of Mrs. Stewart was a latent equity; and a parol direction by her to her trustee, who had the legal estate, to mortgage the same for her benefit, would bind and estop her against thereafter questioning the mortgage. (*Worrall* v. *Munn,* 5 *N. Y.* 229. *Wood* v. *Auburn and Rochester R. R. Co.,* 8 *id.* 160.) She could do this by an agent, and might appoint her husband, as she did. (*See Knapp* v. *Smith,* 27 *N. Y.* 277; *Buckley* v. *Wells,* 33 *id.* 518; *Smith* v. *Sweny,* 35 *id.* 291; *Owen* v. *Cawley,* 36 *id.* 600.) The retaining the money paid by direction of Stewart, the husband, on the Gelston and Van Slyke mortgage, is an adoption and ratification of his agency by Mrs. Stewart, the wife. (*See Lawrence* v. *Taylor,* 5 *Hill,* 107; *Smith* v. *Sweny,* 35 *N. Y.* 291.)

V. The only exception to the admission of evidence not involved in the merits and covered by our previous points, is the admission of Stewart's letters. These letters are only material on the theory that we must depend upon our fourth point to sustain the report; and if, under the cases there cited, Stewart was the agent of his wife, the letters are competent.

VI. It is suggested that Brown received no considera-

tion for his mortgage. That is of no consequence. He had the right to make a mortgage for the accommodation of Stewart or Mrs Stewart; and the question is, did the mortgagee part with a consideration.

*By the Court*, JOHNSON, J. The only question in this case, of any importance upon the merits, is, whether the mortgage in question is a valid and subsisting incumbrance upon the premises mortgaged, as against any interest which Mrs. Caroline Stewart may have therein.

The legal title to the premises was apparently in the plaintiff, who was the mortgagor. He held the same by virtue of two conveyances from previous owners in common, which were absolute on their faces, and apparently vested in him a complete and perfect title. It appears, however, from the evidence and the findings of the referee, that one equal third part of the said premises was conveyed to the plaintiff by the then owner, at the request of Mrs. Stewart, who paid the consideration, and who requested the plaintiff, by parol, to take the title to himself, and hold the premises for her. Nothing was said, as the referee finds, about the form of the deed. Mrs. Stewart was not present when it was made, but she directed that it should be deeded to the plaintiff, for her benefit, and supposed it had been so deeded. This, I think, brings the case clearly within the statute (1 *R. S.* 728, § 51) where the grant is made to one person for a valuable consideration paid by another. No trust whatever, in such case, results in favor of the person by whom the payment is made, but, as to him, the title vests absolutely in the grantee. The case does not fall within section 53 of the statute, for the reason that the title was taken in the name of the plaintiff, *with* the knowledge and consent of Mrs. Stewart, and it is not found, nor does it appear by the evidence, that she either directed or expected the conveyance to be different from what it was, in its terms. The

plaintiff was to take the title to himself, and hold for her, manifestly as a naked or secret trust, and the presumption is, in the absence of evidence and finding of fact to the contrary, that the conveyance was made in accordance with the understanding of all the parties to the transaction. In this respect the case differs from that of *Lounsbury* v. *Purdy*, (18 *N. Y.* 515.) In that case it was found, as a fact, that the plaintiff intended and expected that the deed would appear, upon its face, and by its terms, to be for her benefit. That was the interpretation of the finding in that case, and the decision was placed expressly upon the ground that it was found, as matter of fact, that the deed had been taken by the alienee, as an absolute conveyance, in his own name, without the knowledge or consent of the plaintiff. No such fact is found in this case, and the law does not raise the presumption, in the absence of such finding. It certainly cannot be found or presumed, from the evidence in the case, that she designed or expected to have the conveyance in the form of a conveyance in trust, for any of the purposes authorized by statute; for her husband was allowed by her to have the sole and exclusive management and control of her interest, at all times, after the conveyance; and she testifies that he was her agent for that purpose. This view alone, in my opinion, completely sustains the referee's conclusion of law. As matter of law, the whole title was in the plaintiff, and no use or trust resulted or existed in her favor.

But even if it could be found from the evidence, as I think it cannot, that she did not understand that the conveyance to the plaintiff was to be made absolute in its terms, or consent that it should be so made, her interest would be but an implied or resulting trust, and cannot be alleged or established, to defeat or prejudice the mortgage, which was certainly given for a valuable consideration, unless the mortgagee had notice of the trust, either at the time, or before the execution and delivery of the mortgage.

Upon the question of notice, the referee has expressly found, as matter of fact, that the mortgagee had no notice or knowledge to put him upon inquiry, as to the existence of the trust. The plaintiff's counsel controverts this finding of fact, and insists that it should have been found the other way. But looking at the whole case, and the entire examination of the witness by whom the notice was sought to be established, I am of the opinion that the referee was right in this finding of fact. The testimony is vague and indefinite, both as to the time and place of giving the information, and also as to its precise character. The referee had the witness before him, and could judge much better than we can whether the statements of the witness, such as they were, were entitled to sufficient credit, and carried such weight as to occasion the defeat of the mortgage which the witness himself had caused to be made.

Cherry, the mortgagee, was dead, and certainly parol evidence, of notice to him, years before the mortgage was executed, should be clear, explicit and of undoubted credit, to justify a finding that such notice had been given. The witness did not claim or pretend that any such notice was given at the time he procured the money to be advanced by the mortgagee, and the mortgage to be given by the plaintiff, but puts it at a time long anterior to that, and in a conversation on another and different topic. Upon this ground, also, the conclusion of law in the report is fully sustained. The plaintiff has no personal interest in the action, but brings it solely for the benefit of Mrs. Stewart, to prevent the foreclosure of the mortgage against what is regarded between them as her interest.

This disposition of the case upon the merits, renders it wholly unnecessary to examine the question of the admissibility of the letters of the husband in evidence. Those letters were introduced only on the question of the agency of the husband, and his authority to cause a valid mortgage to be made upon property held by or for his wife.

But in either view of the case, which I have taken, and which I think is entirely conclusive against the plaintiff's right of action, that question is wholly immaterial, and could not possibly prejudice the plaintiff, even if they were improperly received. I incline, however, to the opinion that they were competent evidence, in connection with the other evidence in the case, for the purpose for which they were obviously offered and received.

The judgment must therefore be affirmed, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 5, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]